# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

August 1, 2007

Dominick Bratti
Fox Rothschild LLP
75 Eisenhower Parkway
Roseland, NJ 07068
    (*Attorney for Plaintiff Clyde Cook*)

Vincent M. Giblin
Kroll Heineman Giblin, LLC
99 Wood Avenue South, Suite 307
Iselin, NJ 08830
    (*Attorney for Defendant New Jersey Building Laborers Statewide Benefit Funds*)

Laborers International Union of North America, Local 592
725 River Road
Edgewater, NJ 07020
    (*Defendant*)

Ray Grover, Inc.
134 East Shore Culver Road
Branchville, NJ 07826
    (*Defendant*)

Raymond Grover
c/o Ray Grover Inc.
134 East Shore Culver Road
Branchville, NJ 07826
    (*Defendant*)

Kelli Grover
c/o Ray Grover Inc.
134 East Shore Culver Road
Branchville, NJ 07826
    (*Defendant*)


      RE:   *Cook v. New Jersey Building Laborers Statewide Benefit Funds, et al.*,
             Civ. No. 07-2934 (WJM)

Dear Counsel:

      This matter initially came before the Court pursuant to a June 25, 2007 application by Plaintiff Clyde Cook for an order enjoining Defendant New Jersey Building Laborers Statewide Benefit Funds (the "Funds") from proceeding with an arbitration, scheduled for June 28, 2007, seeking allegedly delinquent fund contributions. On June 26, 2007, this Court entered a temporary restraining order enjoining the arbitration until further order of the Court. Defendant Funds subsequently cross-moved for an order compelling arbitration and staying the proceedings. Both motions have been fully briefed.

      After hearing oral argument from Plaintiff and Defendant Funds on July 23, 2007, the Court issued a ruling from the bench denying Plaintiff's motion for a temporary injunction and granting the Funds' motion to compel arbitration. The Court writes now to memorialize and expand upon its ruling from the bench.

      Although the parties have raised other issues in their filings to date, the only issue immediately before the Court is whether Grover-Cook Construction agreed to submit to arbitration any disputes arising out of its agreement regarding the hiring of union laborers. Therefore, the Court will not attempt to provide an exhaustive summary of the background in this case, but will limit its discussion to the facts and arguments relevant to this determination.

BACKGROUND AND RELEVANT FACTS

      According to Plaintiff, in early 2004, Plaintiff entered into a partnership with Defendant Raymond Grover for the purpose of working together on a particular construction project for Sussex County Community College. (Compl. ¶¶ 21-22; Cook Aff. ¶¶ 9-10, June 25, 2007.) The partnership did business as Grover-Cook Construction. (Compl. ¶ 23; Cook Aff. ¶ 11.) On January 20, 2004, Grover signed a Short Form Agreement, on behalf of Grover-Cook Construction, regarding the hiring of union laborers. (Compl. ¶¶ 34-42, Ex. I; Giblin Cert. Ex. 1, June 29, 2007.) The Short Form Agreement incorporates a Collective Bargaining Agreement ("CBA"), indicating that "the undersigned employer [Grover-Cook Construction] and the Unions

hereby agree to be bound by the terms and conditions as set forth in the 2002-07 Building, Site and General Construction Agreement, which Agreement is incorporated herein as if set forth in full." (Giblin Cert. Ex. 1, June 29, 2007.)  The CBA obligates employers bound by its terms to make certain contributions to the New Jersey Building Laborers' Pension, Welfare and Annuity Funds. (Giblin Cert. Ex. A, Article XIV §§ 14.00, 14.10 & 14.20, July 20, 2007.)  Additionally, the CBA contains provisions requiring arbitration in the event of a dispute that cannot be resolved by alternative means. (*See* Giblin Cert. Ex. A, Article XXI § 21.20, July 20, 2007.)  The CBA also incorporates a Trust Agreement, which provides for arbitration to collect delinquent contributions, and pursuant to which J.J. Pierson, Esq. was appointed as the Funds' permanent arbitrator. (Giblin Cert. Ex. A, Article XIV §§ 14.00, 14.10 & 14.20, July 20, 2007; Giblin Cert. Ex. 4, June 29, 2007.)

Defendant Funds argues that Grover-Cook Construction is delinquent in its fund contributions in the amount of $286,752.39, and that the matter must proceed to arbitration pursuant to the agreement between the parties. (Def.'s Opp. 4-5.)  Plaintiff alleges that Mr. Grover never informed Plaintiff of the nature of the agreement with the Unions, and that Mr. Grover was not authorized to enter into such an agreement on behalf of the partnership. (Compl. ¶¶ 124-25.)  Plaintiff further alleges that until June 18, 2007 — when Kelli Grover, the bookkeeper/office manager of Grover-Cook Construction and the wife of Mr. Grover, handed Plaintiff a box of documents just before the couple left town — Plaintiff was completely unaware that Grover-Cook Construction was allegedly delinquent in its fund contributions, or that an arbitration hearing was scheduled to take place in ten days. (Cook Aff. ¶¶ 18, 91-93.)  When the Funds and the arbitrator refused to consent to an adjournment of the arbitration, notwithstanding Plaintiff's representation that it would be impossible for Plaintiff and his newly-retained counsel to prepare for the arbitration on such short notice (*see* Horowitz Cert. ¶¶ 6-10, June 24, 2007), Plaintiff came before this Court requesting an emergency order staying the arbitration.

This Court initially granted a temporary restraining order preventing the arbitration from going forward on June 28.  For the reasons discussed below, however, the Court now finds that temporary restraints are no longer appropriate; that Plaintiff has not met the standard for a preliminary injunction further staying the arbitration; and that an order should be entered compelling arbitration.

## DISCUSSION

The preliminary injunction standard is a familiar one.  "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004) (quoting *KOS Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)).

I.      **Likelihood of Success on the Merits**

The Court's threshold inquiry focuses on the likelihood of Plaintiff's success on the merits of his arguments that Grover-Cook Construction is not subject to a legally binding arbitration clause regarding the instant dispute with Defendant Funds.

Pursuant to the Federal Arbitration Act (the "FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA establishes a strong federal policy in favor of compelling arbitration over litigation, upon the court's being satisfied that the parties have in fact agreed to arbitrate the dispute in question.  *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104-05 (3d Cir. 2000); 9 U.S.C. § 4.

As the Supreme Court recently explained in *Buckeye Check Cashing, Inc. v. Cardegna*, challenges to the validity of arbitration agreements are generally of two types.  *See* 546 U.S. 440, 444 (2006).  The first type specifically challenges the validity of the agreement to arbitrate.  *Id*.  The second type challenges the contract as a whole, "either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  *Id*.  *Buckeye* emphasizes that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Id*. at 445-46.  In this case, Plaintiff has raised challenges of both types.  The Court will address each in turn.

A.      **Challenges to the Validity of the Agreement to Arbitrate**

Plaintiff argues that Grover-Cook Construction never agreed to arbitrate the instant dispute, for several reasons.  First, Plaintiff argues that the Short Form Agreement signed by Mr. Grover was illegible, and that its execution was thereby fraudulent, because no "meeting of the minds" could have occurred with respect to an unreadable agreement. (Compl. ¶ 16; Pl.'s Br. 10-11.)  While Plaintiff's copy of the agreement is indeed illegible, Defendant has provided the Court with a legible copy of the agreement bearing Mr. Grover's signature. (*See* Compl. ¶¶ 41-42, Ex. I; Giblin Cert. Ex. 1, June 27, 2007.)  There is no other evidence which could lead this Court to the conclusion that the agreement was illegible to Mr. Grover when he signed it.  The Court, therefore, rejects this argument.

Second, Plaintiff contends that the language of the Short Form Agreement did not clearly incorporate the CBA, and that Mr. Grover could not have bound Grover-Cook Construction to the terms of the CBA or the Trust Agreement merely by signing the Short Form Agreement. (Pl.'s Reply Br. 2-9; Pl.'s Second Reply Br. 1-4.)  The Court finds, however, that the Short Form Agreement clearly incorporates the CBA, which clearly refers to the Trust Agreement.  It was not necessary for the Short Form Agreement to explicitly mention arbitration or the term "Collective

Bargaining Agreement." Plaintiff also asserts that Mr. Grover never received a copy of the CBA.[1]  (Pl.'s Second Reply Br. 1-4; Epstein Cert. ¶¶ 3-4.)  Nevertheless, although it would have been prudent for Mr. Grover to request and review a copy of the CBA prior to signing the Short Form Agreement, the argument that he never received a copy of the CBA does not make Mr. Grover or Grover-Cook Construction any less bound by its terms.

Third, Plaintiff argues that Mr. Grover lacked the authority to bind Grover-Cook Construction to a contract of this type, because entering into a CBA would have been beyond beyond the ordinary course of the partnership business.[2]

Under New Jersey Uniform Partnership Law, "[e]ach partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority." N.J. Stat. § 42:1A-13.  Additionally, "[a]n act of a partner which is not apparently for carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership only if the act was authorized by the other partners." *Id.*

According to Plaintiff, the Grover-Cook Construction partnership was formed for the purpose of performing masonry and construction work at Sussex County Community College. (Cook Aff. ¶¶ 9-11.)  The Court finds that signing a Short Form Agreement in order to enable the partnership to hire union laborers, and thereby binding the partnership to the terms of a CBA, was clearly within the ordinary course of business for Grover-Cook Construction.  Consent of both partners was, therefore, not required under New Jersey law.  *See* N.J. Stat. § 42:1A-13.

Moreover, even if Mr. Grover had no authority to act for the partnership in this particular matter, there is no indication that the Union "knew or had received notification that the partner lacked authority." *See id.*  To the contrary, by signing "Ray Grover, Part." in an area designated "Signature of Authorized Representative or Agent," Mr. Grover represented to the Union that he

---

[1]  In support of this point, Plaintiff provides a certification from his counsel, Fox Rothschild LLP, regarding contacts Fox Rothschild made with Mr. Grover's previous counsel, Lindabury, McCormick, Estabrook & Cooper.  According to the certification, the Lindabury firm informed Fox Rothschild that Mr. Grover had represented to the Lindabury firm that he was never provided with a copy of the CBA. (Epstein Cert. ¶¶ 3-4, July 20, 2007.)  The Court has no evidence on this point from Mr. Grover directly.

[2]  At oral argument, counsel for Plaintiff informed the Court that there is no written partnership agreement between Plaintiff and Mr. Grover.

5

indeed had authority to bind Grover-Cook construction to the agreement. (*See* Giblin Cert. Ex. 1, June 27, 2007.)

Finally, Plaintiff argues that the language in Defendant's "Default in Payment" provision of its Trust Agreement is unconscionable in that the Funds reserve for itself the ability to "designate a permanent arbitrator to hear and determine collection disputes." (Pl.'s Reply Br. 9.) In support of this argument, Plaintiff cites *Hooters of America*, *Inc. v. Phillips*, in which the Fourth Circuit held invalid a set of arbitration rules which were "so one-sided that their only possible purpose is to undermine the neutrality of the proceeding." 173 F.3d 933, 938-40 (4th Cir. 1999). The Court finds the set of biased procedures described in *Hooters* wholly distinguishable from those at issue here, and declines to hold that the Funds' ability to designate a permanent arbitrator renders the agreement to arbitrate "unconscionable" in this matter.

Therefore, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits as to his challenges to the validity of the agreement to arbitrate.

### 2.     Plaintiff's Remaining Challenges

Plaintiff's other primary argument is that the CBA in this case was openly treated by all parties as a "members only" agreement, and is consequently void. (*See* Compl. ¶¶ 110-15, 117; Pl.'s Br. 6-10.) This argument challenges the validity of the contract as a whole, and is therefore reserved for the arbitrator in the first instance. *Buckeye*, 546 U.S. 440, 445-46.

Plaintiff also argues that the $286,752.39 in delinquent fund contributions sought by Defendant improperly includes obligations assumed by Raymond Grover and Ray Grover, Inc. prior to the formation of Grover-Cook Construction. (Pl.'s Reply Br. 11-12.) Plaintiff argues that under N.J. Stat. § 42:1A-18, Plaintiff cannot be held liable for such prior obligations. The Court finds that this argument, too, must be evaluated by the arbitrator in the first instance.

For the foregoing reasons, the Court concludes that Plaintiff fails to demonstrate a likelihood of success on the merits as to his challenges to the validity of the agreement to arbitrate in this matter.

## II.    Irreparable Harm

Because the Court finds that Plaintiff has failed to make the first required showing, we need not reach the other three steps in the preliminary injunction analysis. However, the Court notes that even if Plaintiff were to incur harm as a result of the arbitration, the damages would be quantifiable and potentially recoverable, rather than irreparable.

## CONCLUSION

  For the foregoing reasons, in addition to the reasons articulated in open court on July 23, 2007, Plaintiff's Application for a Preliminary Injunction is **DENIED**. The Funds' Motion to Compel Arbitration and Stay Proceedings as to claims against Defendant Funds is **GRANTED**. The parties shall proceed to arbitration, but the arbitration hearing shall not be scheduled to occur any sooner than two weeks after July 23, 2007. An appropriate Order accompanies this Letter Opinion.

            s/William J. Martini

            **William J. Martini, U.S.D.J.**